Good morning, Your Honor. I'm Thomas Kielty on behalf of the defendant, Hector Ovidia Diaz. May it please the Court, Mr. Diaz would like to make a few points to assist the Court. First, Mr. Diaz would like to point out that in the reply brief of the government, there's no opposition to his argument, which is the core of his argument, which is that the pre-sentence report is not evidence on contested issues. Secondly, Mr. Diaz urges his Court to adopt a legal standard to bring certainty to this issue and give guidance to the district courts. This is the standard that's currently articulated in the Eighth Circuit case of U.S. v. Ayerhart, 415 F. 3rd, 965, which is that a fact that is contested and contained in a pre-sentence report and in no other source is not evidence and cannot be relied upon by a sentencing judge. Are you talking about the fact of the value of the tractor-trailer? Is that what you're talking about? Yes, and other facts of values relating to furniture and toilet paper and rafts. Even if you include the furniture and the toilet paper values to get the advisory guideline calculation, in essence, they're irrelevant because if you add the 28,000 wheels and the tractor-trailer value, not what was paid for to the undercover agent, but the value, you get over 70,000 and you're talking about the same base offense level, correct? That is correct, Your Honor. So aren't we down to talking about the tractor-trailer? I think that's what the trial judge said, even if I ignore the furniture and I ignore the toilet paper. You're correct. It's still at the offense level, so was there an objection to the valuation of the tractor-trailer? Yes, there absolutely was, Your Honor, and I'll go right to that. Mr. Diaz specifically objected to the valuation of the tractor-trailer by objecting to paragraphs 39 and 92 of the pre-sentence report. That's in the excerpts of records at page 25. More specifically, Mr. Diaz objected to the valuation of the tractor-trailer in his position on sentencing, and the precise reference to those is found in excerpts of records, page 30. I believe the entire argument of the government is based on the fact that Mr. Diaz did not specifically object to paragraph 21 of the pre-sentence report, which included a throwaway line that the trailer was worth 25,000 and the truck was worth 20,000. However, the thrust of paragraph 21 relates to the valuation of the rims, which are the subject of the stipulation that Mr. Diaz entered into with the government. Were the other objections you're referring to, were they general in terms of objecting to use as relevant conduct, or were they specific objections to the total $45,000 valuation of the tractor-trailer? The latter, Your Honor, specific. The paragraphs, both of those paragraphs are the only two places in the pre-sentence report where the figure $45,000 is mentioned. And what the government has done, and it's a very clever argument, has latched on to the last sentence in paragraph 21, which mentions the truck and the trailer, which contain the rims, throws in the valuation or some speculation as to what the value is. The problem with paragraph 21 for Mr. Diaz is that paragraph 21 includes the valuation of the rims. That is the part of the pre-sentence report that Mr. Diaz and the government entered into a stipulation on. And Mr. Diaz was under an obligation pursuant to the plea agreement not to dispute any of the sentence stipulations. I suppose that, as Mr. Diaz's counsel, I could have, besides specifically objecting in my pre-sentence report, my petition paper, to the value, to the valuation of the truck and tractor, and specifically objecting to paragraphs 39 and 92, which were the only two paragraphs that listed all of the values, I could have made an objection to the last sentence in paragraph 21. It did not occur to me, and I think it would be unnecessary and surplus to have done that. I think it's clear from the objection to paragraphs 39 and 92, and from the language that is in my petition paper, which is found on excerpts of Record 30, that the issue of the valuation of the truck and trailer were an issue. Well, all right. So what are you contending that the district court should have done once, assuming that you put the valuation of the truck in issue? Because I guess the value, you had sold it to the agent for $500. That was obviously one possible valuation that the district court could have adopted. But he didn't. He chose to adopt the PSR's valuation. What should he have done? It's a very difficult question for me to answer, Your Honor. I think that the sentencing judge was in a difficult position in light of the fact that the government and I had entered into a stipulation. We had had negotiations, and we entered into a stipulation. It was a C plea, wasn't it? I'm sorry? It was a C plea. I mean, the judge wasn't bound by your stipulation. Correct. That's correct. The problem is, because there was no other evidence available to the court, I think the court, I mean, the record starts to look like the judge is acting in some fashion as an advocate. And I actually spoke about this issue with somebody from the Federal Defender's Office in Los Angeles, and we sort of opined that possibly the judge could have ordered the probation department to proffer evidence. I'm not sure how that would have happened. I'm not sure about the logistics of that. Do you have gone out and had the truck evaluated by a valuation expert and submitted that evidence? You know, I could have, Your Honor, but actually I don't know if I could have. I don't know if it was available. The court actually addressed a number of questions specifically to the government in this case about that issue and was given information by the government that the information was simply not available, which further supports the conclusion that there's no evidence to make a finding. I think that it is... If we went to the 500 valuation and left in the toilet paper and furniture, are you still at the four-level increase? The toilet paper and furniture aren't even an issue. I mean, everybody agrees that those were objected to, and there's no evidence about them, or at least... I actually put the toilet paper and the furniture and the rafts and the tractor-trailer all in the same category. The only distinction the government makes in their reply is they make the argument that the valuation of the truck and trailer are not contested. The government does not even oppose my argument that the contested issues cannot be supported without any evidence outside the pre-sentence report. Counsel, at the sentencing hearing, did you specifically raise the issue that the valuation of the tractor-trailer was not reliable? Yes. Where in the sentencing transcript could I find that? Well, Excerpts of Record 39, which is page 7, I say, and this is general, well, of course, Your Honor, you can see from my papers that I disagree that there is any reliable evidence to support that conclusion. Right, but I was asking about the specific point that you made regarding the tractor-trailer and the valuation of that and how the court could not rely on the value that's in the pre-sentence report. Is a specific challenge made in that regard? Well, I'm not sure orally. I mean, it was in my papers. It was... The papers were kind of general, too. That's the difficulty. No, no, the papers were very specific. If you look at Excerpts of Record 30, at line 8, I say the valuations contained in the PSR regarding the value of the furniture, the toilet paper, and the truck specifically are multiple hearsay, no corroboration, no identification. I mean, just because the same arguments apply specifically to all three doesn't make it not a specific argument. My recollection of the sentencing hearing was it was difficult to articulate positions. The trial judge had a lot to say, and a number of times I would begin to articulate a position, and he would, as his want and right to do as his court, start talking and go on for a good long time. And I do recall, and I'll continue looking for it in the record that he had... Let me just ask one last question. Is it your position that since there's no evidence that the judge could have used to have that $45,000, a number attributed to the tractor trailer, that it should be subtracted out, in which case he's under the $70,000? Is that what you're saying? Yes. And that from there, would we just make that finding, or do we remand for resentencing? I would request that you make the finding, because we're fast approaching mootness. What's the sentence? I think he got 16 months. So when is it? Probably sometime this summer. Okay. All right. Thank you, counsel. Thank you. May it please the Court, Nancy Cardin on behalf of the United States. At the sentencing hearing in this case, the Court made reference to being able to hold an evidentiary hearing on the issues with regard to loss. And the defense did not ask for an evidentiary hearing, and it was understandable, I think, during the sentencing hearing why the defense did not. And that is because the Court said, we don't know about the other big rigs in this case. We haven't calculated that. We haven't calculated the wraps. It's very possible that when we get all of the other valuations, that it's going to be much higher than what is in the pre-sentence report right now. So it didn't behoove the defendant to have an evidentiary issue or an evidentiary hearing on the issue. With regard to where the evidence came from, with regard to the valuations and the relevancy of the conduct in relation to the conspiracy, on page two of the PSR, at paragraph 13, the Probation Office states that information pertaining to the offense was obtained from the three-count indictment, investigated materials from the Federal Bureau of Investigation, the plea agreements factual basis, and the conversations with the case agents. So the Probation Office did indicate where it got these valuations from. In the sentencing, the Court did set forth two separate ways that it got to the 16-month sentence. Based on its own evaluations pursuant to the PSR, when it added it together, defense level 12, criminal history one, there was the guideline range of 10 to 16 months. And based on the Court's interpretation of this defendant and this offense, the Court was sentencing at the high end of the guideline range to 16 months. Alternatively, the Court indicated that even if I were to accept what's in the plea agreement, if the parties agreed to an offense level of eight, criminal history one, which would be a guideline range of zero to six months, I believe that based on the facts of this case and the defendant, that there should be an upward departure. Under Booker, of course, that's allowable for there to be a departure from the guideline range. And the Court set forth the reasons for that departure from the zero to six range, being that the co-defendants in this case, who were deemed by the Probation Office to be equally as culpable as defendant, were sentenced to 24 months. Another one was sentenced to 41 months. This defendant had prior arrests that were not taken into account. Also, the Court determined that this offense was a sophisticated offense. It was stealing a Big Rigs, sending the stolen items into a warehouse, unloading it, having those items then be purchased by future consumers. There was also a great amount of loss to the individuals who were using the Big Rigs to transport interstate certain shipments of goods. So based on that, the government felt that using the Booker, the 3553 factors, that 16 months is, in fact, an appropriate sentence. In any remand to the district court, there shouldn't be a remand based on the Manyweather case, because we know now what the Court would do if there were a remand. It's harmless error. The Court would still sentence to 16 months. Thank you. Okay, thank you, counsel. I think your time is up.
judges: Wardlaw, Rawlinson, Cebull